[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Michael J. Whelton, Esq., Defense Counsel, for Petitioner
Christopher Morano, Esq., Assistant State's Attorney for the State.
MEMORANDUM OF DECISION
Sentence Affirmed.
BY THE DIVISION: The petitioner, who was thirty (37) years of age at the time of his sentencing, was convicted after a jury trial of Assault in the First Degree in violation of Conn. Gen. Stat. Sec. 53a-59(a)(1)[1] and Kidnapping in the First Degree in violation of Conn. Gen. CT Page 9744 Stat. Sec. 53a-92(a)(2)(B).[2] In each count the convictions were as an accessory (Sec. 53a-8). (The provisions of Sec.53a-8 provide that an accessory may be prosecuted and punished as if he were the principal offender). He was sentenced to a term of twenty (20) years on the charge of Assault in the First Degree, and to a consecutive sentence of twenty-five (25) years on the charge of Kidnapping in the First Degree. The total effective sentence was forty-five (45) years.
In his presentation to the Review Division, the petitioner asks that we consider that he has no prior record, that his role was that of an accessory, that he was out on bond from his arrest through his appeal and was never arrested in that approximately four (4) year period, that he was using drugs at the time of the offense, that he did not expect the victim to be so severely beaten and that imposing consecutive sentences for what is essentially one offense is not proportional.
He also states that a co-defendant, who actually inflicted the horrendous injuries to the victim, received a lesser sentence.
Although convicted under the accessorial statute, the file clearly shows that the petitioner's involvement in this most serious crime was far from peripheral. And, of course, Section 53a-8 makes no distinction as to penalty.
The victim in this case was in the United States Navy stationed in Connecticut. His wife became involved with the petitioner, and there is an indication that the petitioner supplied her with cocaine. From time to time they used cocaine together. Apparently this relationship was causing some strife between the victim and his wife, as was her use of cocaine. The end result of this friction was that the petitioner determined to "take care of the problem." According to the wife's statement, if the victim slapped her again for using drugs, he "wasn't going to be around to tell anybody about it." This conversation took place a day or two before the attack on the victim.
The petitioner masterminded a scheme which resulted in the victims permanent and serious incapacitation. The petitioner went to the co-defendant's residence and arranged to have him commit what turned out to be a near fatal assault on the victim. On January 16, 1987, the petitioner lured the victim to his home in West Hartford (the victim, apparently sensing the danger he was in, had earlier given a sealed note to his Commanding Officer with instructions to open it if CT Page 9745 something happened to him. The note was opened on the day of the assault. It read "Larry 521-9629. There is a strong possibility that I might meet with death or harm by this man" and it was signed by the victim. The telephone number was listed to the petitioner — Lawrence McMurray. That note in part led police to the petitioner's home where they saw obvious signs of an Assault, i.e. blood on the driveway. (When the police went to the petitioner's home to investigate, he came out and a search of his person resulted in the seizure of cocaine and $13,726.33). From the evidence obtained in the investigation, the co-defendant came to the petitioner's house as arranged. At that time and place he struck the victim in the head with a "J-Hook" device used by a wrecker or tow-truck to lift vehicles. That knocked the victim out. He was then handcuffed and driven to Keeney Park, and again struck in the head with a "J-Hook". He was struck a third time with the "J-Hook" and this time the pointed end went into the victim's head. The victim sustained a compound comminuted depressed skull fracture, multiple cranial trauma, and other injuries. He was hospitalized in a Hartford Hospital for fifteen (15) days and then sent to the Naval Hospital in Bethesda, Maryland for approximately one month. He returned some fifty times to Bethesda Hospital for treatment and required the placement of a cranial cap in his head. He had to undergo speech and language therapy because of cognitive difficulties resulting from the assault. His career with the navy is limited. He will likely get a medical or disability type of release after approximately ten (10) years in the navy. His injuries preclude him from shipboard duties and holding a security clearance.
Evidence shows that the petitioner, knowing the victim had already been beaten badly at his home, then directed the co-defendant to be sure the victim's car was removed as the victim was being placed in the co-defendant's vehicle.
All this terrible pain and injury was inflicted on the victim at the behest and planning of the petitioner. His claim that the victim was not supposed to be hit that hard strains credulity, as it did to the trial court.
The sentencing Court commented on the implausibility of the claim that the co-defendant just coincidentally happened to come to the scene. That Court indicated that as the initiator, planner and mastermind of this crime the petitioner bore more responsibility than the co-defendant, who in effect was used by the petitioner to further his own goals. CT Page 9746
Further, despite the viciousness of the assault the co-defendant attempted to show some remorse by his admission of guilt to a charge of Assault in the First Degree (Conn. Gen. Stat. Sec. 53a-59(a)(1) and Kidnapping in the First Degree (Conn. Gen. Stat. Sec. 53a-92(a)(2). He received consecutive sentences on each Count of fifteen (15) years, suspended after ten (10) years, for an effective sentence of thirty (30) years, execution suspended after twenty (20) years, followed by a five (5) year probationary period. At the co-defendant's sentencing hearing, the trial court took into consideration the fact he had testified at this petitioner's trial, and that he was probably in a drug-induced psychosis at the time of the crime. (The co-defendant testified that he had been doing cocaine at the petitioner's home earlier on the day of the assault).
The Court, in considering its sentence, took into account what it termed a "cesspool" the petitioner created by supplying the victim's wife with drugs, by involving the co-defendant (and his brother) to accomplish his own nefarious purpose — the "taking care" of the victim, and of course the devastating injuries that resulted to the victim.
The Review Division finds that the sentence imposed by the Trial Court was not inappropriate under all of the circumstances of this case, and that it was within reasoned parameters weighing the nature of the offense, the petitioners character and background, protection of public interest as well as deterrent, denunciatory and rehabilitative purposes which go into the discretionary aspect of a particular sentence.
Klaczak, Norko, and Stanley, J.s participated in this decision.